OPINION OF THE COURT
David B. Saxe, J.
Plaintiff Phibro Distributors Corp. (Phibro) moves for summary judgment on its complaint to recover additional moneys under a letter of credit issued by defendant. Defendant Fidelity International Bank (Fidelity) cross-moves for summary judgment dismissing the complaint on the grounds that plaintiff has already been properly paid under the letter of credit.
*499 In November 1988, Phibro entered into a contract with Sen Mar, Inc. (Sen Mar). Sen Mar was to purchase from Phibro 350,000 barrels of fuel oil, at a price to be determined by reference to an industry publication and including the 2.83% New York State gross receipts tax on petroleum products. To secure the transaction, Sen Mar caused a letter of credit to be issued by Fidelity in favor of Phibro for a maximum of $6,431,925.30.
Phibro presented documents for payment of $6,243,141.38 on the letter of credit on February 11, 1989. Payment was made in the sum requested. Then on February 24, 1989, Phibro made a second presentation seeking $176,430.97 representing Sen Mar’s liability for the gross receipts tax, which had not been incorporated in the first presentation. Fidelity rejected the second presentation and refused to make any further payments on the letter of credit, indicating that liability was satisfied by payment in full on the first presentation, that partial drawings on the letter of credit were not permissible, and that the documents presented the second time did not conform to the letter of credit’s terms.
Plaintiff initially brought an application under CPLR 3213 for summary judgment in lieu of complaint to recover the sum sought on the second presentation. Defendant cross-moved to dismiss alleging the letter of credit had been satisfied in full on the first presentation. The court denied both applications finding that the papers presented questions of fact as to (1) how the revised price of $.47 per barrel was calculated; (2) what the term "combined documents acceptable” in the letter of credit means; (3) whether the letter of credit provided for partial draws; and (4) whether both invoices refer to the same Phibro contract.
The parties have completed discovery and they agree that those factual issues have substantially been resolved. The second invoice with its $.47 price term refers to the moneys due for payment of the New York State gross receipts tax and the two presentations seek recovery for a single shipment under the one previously mentioned oil contract. Further, the parties indicate that the term "combined documents acceptable” used in the letter of credit is irrelevant to these proceedings, since there is no issue of combined documents presented.
Thus, the only issue remaining is whether a second presentation and partial draw are possible under the terms of the letter of credit.
*500 The letter of credit does not explicitly address this issue. However, it incorporates by reference the Uniform Customs and Practice for Documentary Credits, International Chamber of Commerce Publication No. 400 (1983 rev) (UCP). The parties agree that the UCP governs this transaction, but they disagree on how it applies. Plaintiff contends that under section 44 of the UCP partial draws are permitted and defendant argues that section 44’s reference to partial draws is limited to standby letters of credit, which the subject letter is not.
Section 44 provides that "[p]artial drawings and/or shipments are allowed unless the credit stipulates otherwise.” The express and clear language of the provision supports plaintiff’s reading that partial drawings are possible and proper. Such reading does not appear inconsistent with any other provision of the UCP. Moreover, the UCP applies to all credits, standby or otherwise (see, art 1), and the terms are to be used interchangeably (see, art 2). While the legislative history tends to reflect partial draws were first permitted when the UCP was amended to include standbys, the wording of the provision would tend to negate any intent to limit it to just standbys. If the drafters had intended partial draws to apply only to standbys, they could have so stated; instead exclusion from the provision was left to the parties drafting the letters. Here, the bank could have avoided the problem by simply prohibiting partial draws in the letter itself. It did not do so and may not read into the UCP provisions that are not there in order to correct its own failure in this regard.
Although partial draws are proper, I nevertheless conclude that the documents presented on the second presentation were not proper and could be properly rejected as nonconforming.
The letter of credit required the presentation of these documents in order for funds to be drawn down:
"(1) Copy of telexed commercial invoice covering 350,000 barrels plus or minus 10 percent of no. 6 (1.0 percent sulfur) fuel oil
"(2) A signed statement from a purportedly authorized signatory of Phibro Distributors Corporation stating that the above commercial invoice was calculated in accordance with Phibro Distributors Contract No. 33002124-S
"(3) A certificate of quantity and quality issued by an independent inspector with the following guaranteed specifications [specifications omitted].”
*501 The invoice presented with the second presentation seeks payment for 350,000 barrels, previously paid for on the first presentation. Fidelity first contends that it is unclear whether the first 350,000 or a second 350,000 barrels is being covered. This objection is merely semantic, in that Fidelity at its examination before trial, in its interrogatories and in the papers herein has indicated its awareness that the moneys sought were under the same contract for the same barrels of oil, but that the funds sought are for taxes which under the contract should have been paid by the purchaser.
The real problem is the inconsistency in the two presentations with respect to the certificates, each of which represents that the invoice was computed in terms of the contract. If the amount on the first invoice is correct, than the second invoice must be wrong. This would and does create a facial discrepancy in the documents for which Fidelity could reasonably decline to make payment. Under UCP article 15 a bank "must examine all documents with reasonable care to ascertain that they appear on their face to be in accordance with the terms and conditions of the credit. Documents which appear on their face to be inconsistent with one another will be considered as not appearing on their face to be in accordance with the terms and conditions of the credit.”
Thus, although a partial draw might be possible, under these facially inconsistent documents it is not. Here there is no indication on the first invoice that it is only a partial draw and not in full satisfaction of the entire shipment, the invoice being for the full amount of oil. Both certificates represent that calculation was in accordance with the contract and each seeks a different amount for the very same goods. Under these circumstances, the bank relied upon the representation in the first presented certificate to its detriment in that it released the documents to its client Sen Mar. The second presentation, which was the result of Phibro’s error in calculating the amount due on the contract, cannot place liability on the bank, when Phibro warranted its original accuracy. The certificate on the first presentation gives rise to an equitable estoppel, particularly when the bank has no knowledge of the terms of the underlying contract, and the party seeking payment represents that the amount sought is correct (North Woods Paper Mills v National City Bank, 121 NYS2d 543, affd *502 283 App Div 731). Thus, the bank was not legally required to pay the moneys sought on the second presentation.
Accordingly, the motion by plaintiff for summary judgment on the complaint is denied and the cross motion for summary judgment dismissing the complaint is granted.